Camisha Sawtelle
Sawtelle Law Firm PLLC
PO Box 5117
Whitefish, MT 59937
(406) 730-1399
Attorney for Defendant

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| JOHN AMBLER AND STACY AMBLER, | |
| Plaintiffs, | CV 23-151-M-DLC-KLD |
| vs. | **Preliminary Pre-Trial Statement** |
| FLATHEAD CONSERVATION DISTRICT, | |
| Defendant. | |

COMES NOW, Defendant Flathead Conservation District ("FCD"), and submits its Preliminary Pre-Trial Statement in compliance with L.R. 16.2(b)(1) as required by Order issued on December 13, 2023.

**A. FACTUAL OUTLINE OF THE CASE**

1.      FCD is a governmental subdivision of the State of Montana and a public body corporate and politic, duly created and existing under and by virtue of the laws of the State of Montana. § 76-15-103(3), M.C.A. In 1948, affected residents

voted to expand FCD's boundaries to incorporate all of Flathead County and incorporated cities and towns, including the unincorporated town of Apgar, Montana.

2. FCD is charged with:

   a. The administration of laws pertaining to the Montana Natural Streambed and Land Preservation Act, found at Title 75, Chapter 7, Part 1, Montana Code Annotated ("the Act" or "310 Law");

   b. Enforcing the policy of the state of Montana that "its natural rivers and streams and the lands and property immediately adjacent to them within the state are to be protected and preserved to be available in their natural or existing state and to prohibit unauthorized projects and, in so doing, to keep soil erosion and sedimentation to a minimum." § 75-7-102, M.C.A.

3. The rules implementing the Act are set out in the Administrative Rules of Montana 36.2.401 through 410 and FCD's Rules revised in 2019.

4. Conservation districts across the State of Montana are funded by mills levied on real property within the boundaries of the district. This funding provides for the operation and conservation activities of each district.

5. The Act does not outright prohibit development or work on streams. Rather, the Act requires due consideration and review of any proposed project before implementation. A project is defined broadly by the Act as "a physical alteration or modification that results in a change in the state of a natural, perennial-flowing stream or river, its bed, or its immediate banks." § 75-7-103(5), M.C.A. The term "immediate banks" is defined in the Administrative Rules of Montana as the area above the mean high water mark and directly adjacent to a stream which when disturbed will physically alter or modify the state of a stream. A.R.M. 36.2.402.

6. FCD, through its volunteer board of supervisors, is responsible for administering the Act, which includes the responsibility and authority to determine its jurisdiction.

7. Stacy Ambler and John Ambler ("Plaintiffs") purchased real property in Flathead County on June 11, 2019. The property is described as:

> Tract 10 of Certificate of Survey Number 17376 situated in Government Lot 3, Section 23, Township 32 North, Range 19 West P.M.M., Flathead County, Montana.  ("Ambler Property")

8. The Ambler Property was originally part of a much larger parcel of land claimed by Charles Howes on May 21, 1908. *Deed attached as Exhibit A*. This claim predates the creation of Glacier National Park in 1910. Since the United States General Land Office granted the property to Charles Howes in 1908, the Ambler Property has remained in private ownership.

9. Plaintiffs pay property taxes to the Flathead County Treasurer on the Ambler Property. Included in the tax bill is the Soil and Water Conservation Fee, which funds the Flathead Conservation District.

10. In November 2022, Glacier National Park fisheries biologists informally inspected the Ambler Property and discovered the stream bank of McDonald Creek had been excavated as part of a home construction. No environmental assessment of the impacts of the home was conducted prior to construction - by Glacier National Park or any other entity.

11. In January, February, and March 2023, FCD received numerous complaints about the house under construction on the Ambler Property.

12. Pursuant to their Rules, FCD notified Plaintiffs of each complaint filed and gave them 15 days to respond or the matter would be processed and enforced as a violation. Plaintiffs responded and a site inspection was scheduled.

13. On February 27, 2023, a site inspection was conducted. On site were: FCD supervisors Roger Marsonette, Scott Rumsey, and John Ellis; Montana Department of Fish, Wildlife and Parks representative Leo Rosenthal; and Petitioners John and Stacy Ambler. The site inspection team (FCD and Montana Department of Fish, Wildlife and Parks representatives) found a house was under construction on the immediate bank of McDonald Creek and the bank had been excavated to create a pad on which to build the house. The pad area had been stabilized with a rock retaining wall on the stream channel side of the property.

14. The inspection team determined a violation of the Act had occurred and recommended:

   a. the removal of the house;

   b. the streambank be restored to its original slopes and revegetated;

   c. a 310 permit be obtained prior to removal of the structure and restoration and revegetation of the streambank; and

   d. erosion control measures be implemented prior to the work being done.

15. At its March 13, 2023 meeting, the FCD Board accepted the inspection team's recommendations and determined a project had been initiated on a perennial stream without a permit and was thus a violation of the Act.

16. On March 20, 2023, Plaintiffs requested FCD to table any decision regarding the complaints to allow time to conduct an analysis of FCD's jurisdiction and determinations.

17. Plaintiffs requested a declaratory ruling on April 3, 2023 pursuant to § 75-7-125, M.C.A. regarding:

    a. FCD's determination of jurisdiction;

    b. FCD's decision to require the removal of the structure, restoration of the bank, and a permit be obtained to do so; and

    c. FCD's decision to deny additional time to gather, analyze, and present relevant information and scientific data.

18. Plaintiffs submitted a request to FCD to dismiss the matter based on their contention that the state does not have jurisdiction over a private inholding.

19. On April 10, 2023, in accordance with its rules, FCD issued an order to cease and desist all activity in the area. Plaintiffs substantially complied with the order.

6

20. On May 3, 2023, at a special meeting, FCD accepted jurisdiction for the declaratory ruling.

21. A public hearing was scheduled for August 25, 2023, to address, first, whether state law applies to private property within the boundary of Glacier National Park; and second, whether Plaintiffs' house is a project requiring a permit under the Act and FCD rules.

22. At the public hearing on August 25, 2023 written and oral presentations were accepted. The Hearing Officer reviewed the information presented and determined that:

   a. FCD has the authority to determine its jurisdiction and has the responsibility to administer the Act on projects undertaken by private parties.

   b. The home, decks, roof line, and retaining wall are within the immediate banks of McDonald Creek and is a physical alteration or modification that resulted in a change in the state of a natural, perennial-flowing stream or river, its bed, or its immediate banks. MCA § 75-7-103(6), ARM 36.2.402(5).

      c. Given the intent and policy of the Act, given the federal government has neither regulated the structure nor indicated the Act interferes with the purpose, policy, and goals of the park, and given the totality of information in the record and a reasonable reconciliation of the information, the record supports a determination FCD has jurisdiction over the Amblers' property on McDonald Creek.

23. FCD accepted the Hearing Officer's recommendations. Plaintiffs are disputing the determination FCD has jurisdiction over the Property and the Act applies to the project on the Ambler Property.

**B. JURISDICTION AND VENUE.**

The United States District Court for the District of Montana has jurisdiction over this matter under diversity jurisdiction, pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between the FCD and the Amblers, and the amount in controversy exceeds $75,000, exclusive of interest, attorney's fees, and costs.

FCD agrees that the United States District Court is the proper venue to determine if the Act applies to this private property. However, once this threshold issue is determined, interpretation and application of the Act is the jurisdiction of

Montana State Courts.

## C. THE FACTUAL BASIS OF EACH CLAIM OR DEFENSE

### 1. The Ambler Property is private property that is not regulated by the Department of the Interior.

Plaintiffs cite 16 U.S.C. § 163 in their Complaint and claim that, "Sole and exclusive jurisdiction is assumed by the United States over the territory embraced within the Glacier National Park." FCD disagrees that the Ambler Property is part of the territory embraced within Glacier National Park. Instead, jurisdiction over the Ambler Property is clarified by 16 U.S.C. § 161, which establishes the boundaries of Glacier National Park and further states:

> Nothing herein contained shall affect any valid claim, location, or entry existing under the land laws of the United States before May 11, 1910, or the rights of any such claimant, locator, or entryman to the full use and enjoyment of his land.

The United States General Land Office granted the property which includes what is now the Ambler Property to Charles Howes in 1908, and it has remained in private ownership since. The provisions of 16 U.S.C. § 163 do not apply to the Ambler Property. Plaintiff also relies on 16 U.S.C. § 162 which states that:

> Glacier National Park shall be under the exclusive control of the Secretary of the Interior, whose duties it shall be, as soon as practicable, to make and publish such rules and regulations not

9

> inconsistent with the laws of the United States as he may deem necessary or proper for the care, protection, management, and improvement of the same, which regulations shall provide for the preservation of the park in a state of nature so far as is consistent with the purposes of this section and section 161 of this title, and for the care and protection of the fish and game within the boundaries thereof.

However, the Secretary of the Interior has no rules and regulations for the care, protection, management and improvement of private inholdings within the boundaries of Glacier National Park. The Secretary of the Interior has no process for regulation of construction within the immediate banks of a stream on private property within the boundaries of Glacier National Park.

**2.  Location of the Ambler Property does not preempt enforcement of a state law.**

The location of the Ambler Property does not preempt enforcement of the Act or any other law. The federal laws creating national parks do not preempt state regulation except for "pervasive reasons" such as showing that compliance with both is a physical impossibility or where Congress evidences a clear intent to preempt state control. *Florida Avocado Growers v. Paul,* 373 U.S. 132, 142 (1963). State law will fall only where it stands as an obstacle to the "accomplishment and execution of the full purposes and objectives of Congress." *Perez v. Campbell*, 402

U.S. 637, 639 (1971).

The Montana Attorney General relied on U.S. Supreme Court holdings to conclude that the Act is appliable to non-federal projects on federal land unless the state regulation inherently conflicts with applicable federal regulation. 37 *Montana Att'y Gen. Op.* 15 (1977). This 1977 Opinion of the Montana Attorney General is consistent with a 1980 opinion interpreting MCA § 2-1-202 to conclude that a plumbers licensing law may be enforced on Malmstrom Air Force Base as to nonfederal entities so long as application of state law does not interfere with the U.S. government's use of the property for military purposes. 38 A.G. Op. 64 (1980).

Here, the Ambler Property is private land, not federal land. Regardless, enforcement of the Act is entirely consistent with the purpose of the National Parks and does not interfere with, but rather supports, the U.S. government.

The Act applies to private projects conducted by private citizens no matter the landownership unless it interferes with federal purposes. Glacier National Park lacks regulations related to construction on private property. There are rigorous rules related to construction on public lands within Glacier National Park (and all federal lands), none of which were complied with by the Plaintiffs. If the

Park Service was initiating a project with potential impacts to a waterbody in Montana, they would obtain a Section 404 permit from the Army Corps of Engineers before discharging any dredged or fill material into waters of the United States. 33 US Code § 1344. In addition, any person agency, or entity, both public and private, initiating construction activity that will cause short term or temporary violations of state surface water quality standards for turbidity must obtain a permit from Montana Department of Environmental Quality MCA § 75-5-318.

Additionally, 36 CFR § 5.7 states that "Constructing or attempting to construct a building, or other structure, boat dock, road, trail, path, or other way, telephone line, telegraph line, power line, or any other private or public utility, upon across, over, through, or under any park areas, except in accordance with the provisions of a valid permit, contract, or other written agreement with the United States, is prohibited." Plaintiffs obtained no valid permit, contract or agreement with the United States.

Plaintiffs obtained **no** permits before initiating work on the banks of McDonald Creek. Plaintiffs' conclusion the property is unregulated and requires no permits is contrary to all public policy – state or federal.

3.  **Nuisance**

In Montana, a project engaged in by any person without prior approval of, or activities performed outside the scope of written consent of the Conservation District Board of Supervisors, is declared a public nuisance and is subject to proceedings for immediate abatement. MCA § 75-7-122. Further "the creation or maintenance of a nuisance upon the federally owned lands of a park area or upon any private lands within a park area under the exclusive legislative jurisdiction of the United States is prohibited." 36 CFR § 5.13. Here the Plaintiffs initiated a project without the consent of the FCD or any other entity. The Plaintiffs project on the Ambler Property is a nuisance and is prohibited under federal law and subject to immediate abatement under state law.

4.  **Public policy creating national parks is consistent with the act and other laws protecting water quality in the State of Montana.**

    The purpose of the National Parks, including Glacier National Park, is to:

    conserve the scenery, natural and historic objects, and wildlife in the system units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations. 54 US Code § 100101(a).

The purpose of the Act is to:

provide adequate remedies for the protection of the environmental life support system from degradation and provide adequate remedies to prevent unreasonable depletion and degradation of natural resources. Further, it is the policy of the state of Montana that its natural rivers and streams and the lands and property immediately adjacent to them within the state are to be protected and preserved to be available in their natural or existing state and to prohibit unauthorized projects. MCA § 75-7-102 (1) and (2).

The purpose of National Parks is consistent with the purpose of the Act. Even if the State of Montana had ceded jurisdiction, the private property within the boundary of Glacier National Park would be subject to the Act. In *United States v. Unzeuta* the US Supreme Court found when "a state cedes jurisdiction to the United States, the state may impose conditions that are not inconsistent with the carrying out of the purpose of the acquisition." 281 U.S. 138 (1930). Here, the public policy creating Glacier National Park is consistent with the Act. FCD is correct in assuming jurisdiction over the Amblers' private property.

**D. THE LEGAL THEORY UNDERLYING EACH CLAIM OR DEFENSE, INCLUDING, WHERE NECESSARY TO A REASONABLE UNDERSTANDING OF THE CLAIM OR DEFENSE, CITATIONS TO AUTHORITY.**

See Answer to C above.

**E. COMPUTATION OF DAMAGES.**

FCD Claims no damages in this federal case other than legal fees.

**F. THE PENDENCY OR DISPOSITION OF ANY RELATED STATE OR FEDERAL LITIGATION.**

Plaintiffs filed a Complaint in Flathead County District Court, 11th Judicial District, pursuant to § 75-7-123 MCA, concurrent to filing this lawsuit in Federal Court. The District Court Complaint has not been served on FCD. Further, all proceedings in FCD process are stayed pending the result of this litigation.

**G. PROPOSED ADDITIONAL STIPULATIONS OF FACT NOT INCLUDED IN THE STATEMENT OF STIPULATED FACTS, SEE L.R. 16.2(B)(3), AND THE PARTIES' UNDERSTANDING AS TO WHAT LAW APPLIES.**

1. Montana's Constitution states:

    All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing, and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities. Article II, Part II, Section 3.

2. The Plaintiffs had the responsibility to obtain permits prior to constructing a home on the immediate banks of McDonald Creek.

3. The project on the Ambler Property is a permanent change to the condition of McDonald Creek. The impacts and future damages caused by the project infringes on Montanans' right to a clean and healthful environment.

**H. PROPOSED DEADLINES RELATING TO JOINDER OF PARTIES OR AMENDMENT OF THE PLEADINGS**.

The parties have until **April 26, 2024**, to join additional parties and amend pleadings.

**I. IDENTIFICATION OF CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION.**

It is the position of FCD that the issue before the Court is a question of law that can be decided through summary judgment. There are no genuine issues of material fact relevant to the issue of FCD's jurisdiction of the Ambler Property.

**J. THE NAME AND CITY AND STATE OF CURRENT RESIDENCE OF EACH INDIVIDUAL KNOWN OR BELIEVED TO HAVE INFORMATION THAT MAY BE USED IN PROVING OR DENYING ANY PARTY'S CLAIMS OR DEFENSES, AND A SUMMARY OF THAT INFORMATION.**

1. Samantha Tappenbeck, Kalispell, Montana. Resource Conservationist FCD. Samantha can speak to FCD's compliance with laws and regulations.

2. FCD Supervisors can speak to FCD's compliance with laws and regulations regarding Conservation Districts in Montana. The supervisors include:
    a. Roger Marsonette, Kalispell, Montana.
    b. Scott Rumsey, Kalispell, Montana.
    c. John Ellis, Whitefish, Montana.
    d. Donna Pridmore, Kalispell, Montana.
    e. Mike Kopitzke, Kalispell, Montana.

      **f.** Pete Woll, Kalispell, Montana.

3. Leo Rosenthal, Whitefish, Montana. Montana Department of Fish, Wildlife and Parks representative. Leo can speak to the role of FWP in administering the Act. Leo can also explain the process for approving federal projects, which require a different permit.

4. Gina Kerzman. West Glacier, Montana. Glacier National Park Public Information Officer. Has information regarding the Plaintiffs' communication with representatives from Glacier National Park.

5. Jim Foster, Columbia Falls, Montana. Glacier National Park Chief of Utility Management. May have information regarding the Plaintiffs' communication connection to Apgar utilities.

6. John Lucke, Columbia Falls, Montana. Glacier National Park Deputy Chief for Facilities. May have information regarding the Plaintiffs communication with representatives from Glacier National Park and utilities.

7. Chris Downs, Columbia Falls, Montana. Glacier National Park Aquatic and Physical Science Programs Leader. May have information regarding the lack of environmental regulation of private inholdings and compare it to the requirements of projects initiated by the park.

8. Laurie Zeller, Helena, Montana. Served as Hearings Officer in the Declaratory Ruling for FCD related to the Ambler Project.

9. Brian Bramblett, Helena, Montana. DNRC Legal Counsel. May speak to DNRC role.

10. CD Bureau Chief Stephanie Criswell, Helena Montana. CD Bureau Chief. May have information regarding the implications on other Conservation District projects across the state.

11. Hailey Graf, Kalispell, Montana. Stream permit coordinator Montana DNRC.

12. Dave Roemer, West Glacier, Montana. Glacier National Park Superintendent. Can speak to the Park's lack of regulation of construction on private property.

K. **THE SUBSTANCE OF ANY INSURANCE AGREEMENT THAT MAY COVER ANY RESULTING JUDGMENT.**

No insurance agreement applies to this matter. The Montana Association of Counties Joint Powers Insurance Authority denied coverage of FCD in this matter because no monetary damages were sought by Plaintiffs in this matter.

L. **THE STATUS OF ANY SETTLEMENT DISCUSSIONS AND PROSPECTS FOR COMPROMISE OF THE CASE.** N/A

M. **SUITABILITY OF SPECIAL PROCEDURES.** N/A

DATED this 12th day of March, 2024.

SAWTELLE LAW FIRM PLLC

By: ___/s/  Camisha Sawtelle
Attorney for Defendant

# The United States of America,

HOMESTEAD CERTIFICATE NO. 599
APPLICATION 1600

To all to Whom these Presents shall Come, Greeting:

WHEREAS, There has been deposited in the General Land Office of the United States a Certificate of the Register of the Land Office at Kalispell, Montana, whereby it appears that, pursuant to the Act of Congress approved 20th May, 1862, "To Secure Homesteads to Actual Settlers on the Public Domain," and the Acts supplemental thereto, the claim of Charles Howes, has been established and duly consummated, in conformity to law, for the

Lots one, two, and three, the south half of the northeast quarter, and the northwest quarter of the southeast quarter of section twenty-three in Township thirty two north of Range nineteen West of the Montana Meridian, Montana, containing one hundred eighty-two and forty-six-hundredths acres.

23-32-19

according to the Official Plat of the survey of the said land, returned to the General Land Office by the Surveyor General:

NOW KNOW YE, That there is, therefore, granted by the United States unto the said Charles Howes the tract of land above described;

TO HAVE AND TO HOLD The said tract of land, with the appurtenances thereof, unto the said Charles Howes and to his heirs and assigns forever; subject to any vested and accrued water rights for mining, agricultural, manufacturing, or other purposes, and rights to ditches and reservoirs used in connection with such water rights, as may be recognized and acknowledged by the local customs, laws, and decisions of Courts, and also subject to the right of the proprietor of a vein or lode to extract and remove his ore therefrom, should the same be found to penetrate or intersect the premises hereby granted, as provided by law. And there is reserved from the lands hereby granted, a right-of-way thereon for ditches or canals constructed by the authority of the United States.

IN TESTIMONY WHEREOF, I, Theodore Roosevelt, President of the United States of America, have caused these Letters to be made Patent, and the seal of the General Land Office to be hereunto affixed.

Given under my hand, at the City of Washington, the twenty-first day of May, in the year of our Lord one thousand nine hundred and eight, and of the Independence of the United States the one hundred and thirty-second.

BY THE PRESIDENT: Theodore Roosevelt

By A. C. Stump Assistant Secretary,

E. W. Sanford
Recorder of the General Land Office.

Recorded Vol. 775 Page 177

Filed for record at the request of Chas. Howes this 12th day of March 1914 at 1-50 o'clock P.M.

By A. J. Shaw Deputy Recorder. No. 792-

Fred S. Perry, County Recorder.

Exhibit A