**Trent Baker**
**J.R. Casillas**
Datsopoulos, MacDonald & Lind, P.C.
201 West Main Street, Suite 201
Missoula, Montana 59802
(406) 728-0810
tbaker@dmllaw.com
jrcasillas@dmllaw.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN AMBLER and STACY AMBLER,<br><br>Plaintiffs,<br><br>vs.<br><br>FLATHEAD CONSERVATION DISTRICT,<br><br>Defendant,<br><br>and<br><br>FRIENDS OF MONTANA STREAMS AND RIVERS<br><br>Intervenor. | CV 23-151-M-DLC-KLD<br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................3

BACKGROUND .....................................................................................................4

STANDARDS .........................................................................................................6

ARGUMENT ...........................................................................................................6

    I.    The extent of federal and state jurisdiction are governed by ceding statutes..6

    II.    The exclusive jurisdiction of the federal government also applies to private land within Glacier National Park. ........................................................................11

    III.    The federal government exercises its jurisdiction to regulate construction on private property within Glacier National Park. ..................................................13

CONCLUSION ......................................................................................................14

CERTIFICATE OF COMPLIANCE ....................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................6
*Arlington Hotel Company v. Fant,* 278 U.S. 439, 445 (1929).............................9, 10
*Chi., R. I. & P. R. Co. v. McGlinn*, 114 U.S. 542 (1885) ............................................8
*Free Enter. Canoe Renters Ass'n v. Watt*, 711 F.2d 852 (8th Cir. 1983) .................12
*Macomber v. Bose*, 401 F.2d 545 (9th Cir. 1968) ....................................................12
*Mont. Pub. Interest Research Grp. (MontPIRG) v. Johnson*, 361 F. Supp. 2d 1222 (D. Mont. 2005) ......................................................................................................6
*Petersen v. United States*, 191 F.2d 154, 156 (9th Cir. 1951), cert. denied sub nom. *State of California v. United States*, 342 U.S. 885 (1951). ..................................12
*United States v. Peterson*, 91 F. Supp. 209, 213 (S.D. Cal. 1950), affd., 191 F.2d 154 (9th Cir.),................................................................................................11
*United States v. Stephenson*, 29 F.3d 162 (4th Cir. 1995)................................ 12, 13
*United States v. Unzeuta*, 281 U.S. 138 (1930) ..................................................8, 9, 11
*Yellowstone Park Transp. Co. v. Gallatin County*, 31 F.2d 644 (9th Cir.)............9, 10

**Statutes**

16 U.S.C. § 162...............................................................................................13
16 U.S.C. § 163.................................................................................................7
28 U.S.C. § 2201.............................................................................................14
Mont. Code Ann. § 2-1-102 ...........................................................................10
Mont. Code Ann. § 2-1-201 .............................................................................8
Mont. Code Ann. § 2-1-205 .............................................................................7
Mont. Code Ann. § 2-1-207 .............................................................................9
Mont. Code Ann. § 75-7-101 ...........................................................................4
Mont. Code Ann. § 75-7-112 (9).......................................................................5

**Rules**

36 CFR § 7.3 ............................................................................................ 13, 14
Fed. R. Civ. P. 56(a) ........................................................................................6
Fed. R. Civ. P. 57...........................................................................................14

## BACKGROUND

Plaintiffs' Complaint (Doc. 1) seeks declaratory and injunctive relief against the Flathead Conservation District (hereinafter the "FCD") asserting that: 1) the FCD has no jurisdiction over the Amblers' real property (hereinafter the "Property"), and; 2) the Montana Natural Streambed and Land Preservation Act, Mont. Code Ann. § 75-7-101 et seq. (hereinafter the "NSLPA") does not apply to the Property.  The Property is located in Apgar Village within Glacier National Park and is more particularly described as:  S23, T32 N, R19 W, 17376-10, PARCEL N/A, TR 2EBCA IN L3, FLATHEAD COUNTY, MONTANA.  Plaintiffs' Statement of Uncontested Facts ("PSUF") p. 2, ¶ 2.

The FCD is a governmental subdivision of the State of Montana charged in part with administration of the NSLPA.  PSUF, p. 2, ¶ 3.  In 2023, the FCD asserted jurisdiction over the Property and advised the Amblers that they violated the NSLPA, that they must remove their structure and that they must apply to the FCD for and obtain a 310 permit under the NSLPA for the removal.  PSUF, pp. 2-3, ¶ 4.  The Amblers requested a "declaratory ruling" from the FCD, which is an internal or administrative process that allows a party to appeal a determination that the FCD has jurisdiction, wherein the Amblers asserted that federal and Montana law both say that the FCD does not have jurisdiction over the property.  PSUF, p. 3, ¶ 5.

On November 13, 2023, at the conclusion of the FCD's internal declaratory ruling proceedings, the FCD again decided that the Amblers violated the NSLPA, that they must remove their structure and that they must apply for and obtain a 310 permit to do so.  PSUF, p. 3, ¶ 6.  The FCD made this decision after receiving a Technical Memo and draft 310 Application prepared by environmental consultant Mike Sanctuary, who concluded that, if the FCD had jurisdiction and NSLPA applied, the Amblers would be entitled to a 310 Permit under the factors set forth in Mont. Code Ann. § 75-7-112 (9), because:

a.  the Ambler's house is constructed outside of the ordinary high water mark and the 100-year floodplain of McDonald Creek and construction did not alter the bed or banks of McDonald Creek;

b.  that the house will not disturb riparian and wetland vegetation or disrupt aquatic habitat; and

c.  the house will not affect the direction or velocity of water flows in McDonald Creek or effect flows during flood events. PSUF, pp. 3-4, ¶ 7.

Mr. Sanctuary reviewed the other information and comments submitted to the FCD, is unaware of any similar analysis regarding the Ambler property, and none of the other information submitted to the FCD changed his conclusions. PSUF, p. 4, ¶ 8.

## STANDARDS

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and, the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Thus, summary judgment is warranted when the evidence produced by the parties permits only one conclusion. *Mont. Pub. Interest Research Grp. (MontPIRG) v. Johnson*, 361 F. Supp. 2d 1222, 1226-27 (D. Mont. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  If the moving party shows that the evidence does not permit a conclusion in favor of the nonmoving party, the burden shifts to the nonmoving party.  The party opposing the motion "may not rest upon the mere allegations or denials of [its] pleading, but…must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.  The Court looks to "whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law." *MontPIRG*, 361 F. Supp. 2d at 1227.

## ARGUMENT

**I.    The extent of federal and state jurisdiction are governed by ceding statutes.**

The State of Montana ceded and the United States accepted exclusive jurisdiction over all land within Glacier National Park subject to only the specific reservations of State jurisdiction articulated in the ceding statute.

Montana law provides as follows with respect to the cession of Glacier National Park with certain reservations of jurisdiction to the State:

> **Glacier national park**. Exclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all the territory which is now or may hereafter be included in that tract of land in the state of Montana set aside by the act of congress, approved May 11, 1910, for the purposes of a national park, and known and designated as "The Glacier national park", saving, however, to the said state the right to serve civil or criminal process within the limits of the aforesaid park in any suits or prosecution for or on account of rights acquired, obligations incurred, or crimes committed in said state but outside of said park; and saving, further, to the state the right to tax persons and corporations, their franchises and property on the lands included in said park; provided, however, that jurisdiction shall not vest until the United States, through the proper officers, notifies the governor of this state that it assumes police or military jurisdiction over said park.

Mont. Code Ann. § 2-1-205.

Federal law provides as follows accepting the cession of Glacier National Park with the same reservations:

> Sole and exclusive jurisdiction is assumed by the United States over the territory embraced within the Glacier National Park, saving, however, to the State of Montana the right to serve civil or criminal process within the limits of the aforesaid park in suits or prosecution for or on account of rights acquired, obligations incurred, or crimes committed in said State but outside of said park, and saving, further, to the said State the right to tax persons and corporations, their franchises and property, on the lands included in said park.

16 U.S.C. § 163.

When there is a question of jurisdiction within state ceded land, courts look to the plain language of the cession to determine the extent of federal versus

jurisdiction. *United States v. Unzeuta*, 281 U.S. 138, 142 (1930) (the terms of the cession, "to the extent that they may lawfully be prescribed, determine the extent of the federal jurisdiction"). When there is an express act ceding land from a state to the federal government the state may, as a condition to the cession, reserve concurrent jurisdiction so long as the reservation is consistent with the purpose of the cession. A "cession may be accompanied with any conditions not inconsistent with the effective use of the property for the public purposes intended." *Chi., R. I. & P. R. Co. v. McGlinn*, 114 U.S. 542, 545-46 (1885); *Unzueta*, 281 U.S. at 142 ("when, in such cases, a state cedes jurisdiction to the United States, the state may impose conditions which are not inconsistent with the carrying out of the purpose of the acquisition").

    Montana law is consistent on this point:

> **Jurisdiction in federal enclaves**. The extent of the jurisdiction of this state over places that have been or may be ceded to, purchased, or condemned by the United States is qualified by the terms of such cession or the laws under which such purchase or condemnation has been or may be made.

Mont. Code Ann. § 2-1-201.

    However, if no conditions are attached at the time of the cession, neither the state nor its political subdivisions can later impose conditions not contemplated by the parties at the time of the cession. The US Supreme Court in *Unzueta* recognized that: "[A]fter this jurisdiction had been accepted by the United States, it

could not be recaptured by the action of the State alone, and hence that an act of the legislature of Nebraska, passed in 1889, seeking to amend the act of cession was not effective…" *Unzueta*, 281 U.S. at 173.

The Court, in *Arlington Hotel Company v. Fant,* 278 U.S. 439, 445 (1929), addressed a privately owned hotel located in Hot Springs National Park in Arkansas. The hotel burned down and its owners sought protection under a later-enacted Arkansas law relieving innkeepers from liability to their guests for loss of fire. *Id.* at 445 – 46. However, the Court held that because the state law was enacted after cession, it did not apply. *Id.* at 446.

The Ninth Circuit Court of Appeals specifically addressed state versus federal jurisdiction as to the portion of Yellowstone National Park located in Montana in *Yellowstone Park Transp. Co. v. Gallatin County*, 31 F.2d 644 (9th Cir.). The court held that the Yellowstone cession statute, Mont. Code Ann. § 2-1-207, unlike the Glacier Statute, did not reserve to the State of Montana the right to tax people or property within the park. The court rejected Gallatin County's attempt to impose taxes on a private company operating in Yellowstone, because the State did not reserve that right at the time of the cession and could not later extend its jurisdiction to impose taxes in the park, stating: "[i]n other words, after the date of cession, the ceded territory was as much without the jurisdiction of the state making the cession as was any other foreign territory, except in so far as

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                                    9

jurisdiction was expressly reserved." *Id.*, at 645 (citing *Arlington*, 279 U.S. 439). Because the state of Montana failed to reserve the right to tax people or property within Yellowstone, "taxing laws of the state of Montana are wholly inoperative in that portion of the Yellowstone National Park within the territorial limits of the state." *Id.*

Again, Montana law is consistent on this point, excepting from state jurisdiction portions of the state in which exclusive jurisdiction was ceded to the United States:

> **Sovereignty and jurisdiction of the state**. The sovereignty and jurisdiction of this state extend to all places within its boundaries as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States.

Mont. Code Ann. § 2-1-102.

Here, the State of Montana ceded exclusive jurisdiction in Glacier to the United States, subject only to the reservation of State jurisdiction for purposes of service of process and taxation.  The NSLPA was enacted seventy-five years after Montana ceded the Park to the United States and its purpose is not related to service of process or taxation.  Montana did not reserve any jurisdiction relating to the NSLPA or issuance of 310 permits for construction near streams at the time of the cession.  Montana and its political subdivisions cannot unilaterally assert such jurisdiction later.  Therefore, the Ambler Property is not subject to the jurisdiction of the FCD or the provisions of the NSLPA.

## II. The exclusive jurisdiction of the federal government also applies to private land within Glacier National Park.

Glacier, like many national parks, contains private property or inholdings within the boundaries of the Park. Private property within Glacier is also subject to the cession of jurisdiction by Montana to the United States. This issue was most extensively analyzed and clearly addressed in *United States v. Peterson*, 91 F. Supp. 209, 213 (S.D. Cal. 1950), affd., 191 F.2d 154 (9th Cir.), holding that the United States' exclusive jurisdiction extended to private property within the boundaries of Kings Canyon National Park under the terms of the cession.

In *Peterson*, the jurisdictional question was whether state liquor laws applied in Wilsonia Village, a tract of privately owned land within the boundaries of Kings Canyon National Park. *Id.* at 211. The court recognized that no state or federal law expressly mentioned Wilsonia Village or private property within the park. Nevertheless, the court reviewed the language of the California law ceding jurisdiction to the United States and held that cession included private inholdings, and therefore the state liquor laws and license were inapplicable in Wilsonia Village. *Id.* at 213 (citing *United States v. Unzeuta*, 281 U.S. 138).

The Ninth Circuit agreed with the district court, finding that "California and the United States were intending by the statutes of cession and acceptance to accomplish unified policing of privately owned and public lands within the park boundaries for the public good in administering the National Park." *Petersen v.*

*United States*, 191 F.2d 154, 156 (9th Cir. 1951), cert. denied sub nom. *State of California v. United States*, 342 U.S. 885 (1951).

In this case, the language of the Montana law ceding Glacier National Park is almost identical to the language considered by the court in the California statute ceding Kings Canyon National Park: "Exclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all of the territory which is now or may hereafter be included in those several tracts of land in the State of California set aside and dedicated for park purposes by the United States as 'Kings Canyon National Park' . . ." *Petersen*, 191 F.2d at 156 n.1.  Just as the cession of Kings Canyon included private property within that park, so does the cession of Glacier.

The Ninth Circuit agrees, citing *Petersen* in finding that the similar language of the Glacier ceding statutes includes private inholdings, stating that "the territory embraced within the Glacier National Park . . . includes not only the public lands dedicated to park purposes by the United States but all privately owned lands within the described park boundaries." *Macomber v. Bose*, 401 F.2d 545, 547 (9th Cir. 1968).  Other circuit courts concur.  See *Free Enter. Canoe Renters Ass'n v. Watt*, 711 F.2d 852, 856 (8th Cir. 1983) (observing that the phrase "within the boundaries" "incorporate[s] federal, state, and private land, and . . . makes no distinction on the basis of ownership"); and *United States v. Stephenson*, 29 F.3d

162, 164 (4th Cir. 1995) (holding that the language "within the limits of said Park" refers to "the statutory boundaries of the Park established by Congress, not to property ownership lines"). Consequently, jurisdiction over the Ambler Property within Glacier National Park was ceded to federal government and not reserved to the State of Montana or the FCD.

### III. The federal government exercises its jurisdiction to regulate construction on private property within Glacier National Park.

The federal government not only has the jurisdiction to regulate construction on private property within Glacier National Park, it exercises that jurisdiction through the United State Department of the Interior. Federal law provides:

> Glacier National Park shall be under the exclusive control of the Secretary of the Interior, whose duties it shall be, as soon as practicable, to make and publish such rules and regulations not inconsistent with the laws of the United States as he may deem necessary or proper for the care, protection, management, and improvement of the same, which regulations shall provide for the preservation of the park in a state of nature so far as is consistent with the purposes of this section and section 161 of this title, and for the care and protection of the fish and game within the boundaries thereof.

16 U.S.C. § 162.

Pursuant to the forgoing law, the federal government has enacted regulations specific to construction on private property within Glacier National Park. See 36 CFR § 7.3. Subsection (b) of 36 CFR § 7.3 requires permits from the Park Superintendent for eating, drinking, or lodging establishments on private land

within the Park and requires those establishments to comply with State and county health laws and ordinances and rules and regulations. Subsection (c) of 36 CFR § 7.3 governs construction of residences on private land within the Park and requires that private sewer and water systems comply with State and county health laws and regulations.

These regulations show that the United States (not the State of Montana or its political subdivisions like the FCD) has jurisdiction over construction of private residences and activities on private land within Glacier National Park and the United States decides which State and county laws or regulations to apply there. There is no federal regulation requiring residences constructed on private land in Glacier to comply with the NSLPA, that act is not applicable to the Ambler Property and the FCD has no jurisdiction to enforce it in Glacier National Park.

## CONCLUSION

The Amblers respectfully request that this Court grant the Amblers' Motion for Summary Judgment because there are no issues of material fact and the Amblers are entitled as a matter of law to a declaratory judgement and injunctive relief under rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 et seq. that the FCD has no jurisdiction or authority under the NSLPA to order the Amblers to dismantle a house they are constructing on real property the Amblers own within Glacier National Park.

DATED this 3rd day of June, 2024.

        DATSOPOULOS, MacDONALD & LIND, P.C.

        By: /s/ Trent Baker
            Trent Baker
            J.R. Casillas

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE

I certify under Local Rule 7.1(d)(2)(E) that this brief is double-spaced, has a proportionally-spaced typeface of 14 points, and contains 2761 words of text, excluding the caption, certificate of compliance, and any table of contents and authorities, exhibit index, and any certificate of service.

DATED this 3rd day of June, 2024.

DATSOPOULOS, MacDONALD & LIND, P.C.

By: /s/ Trent Baker
Trent Baker
J.R. Casillas

*Attorneys for Plaintiffs*