IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHN AMBLER and STACY AMBLER, | CV 23-151-M-KLD |
| Plaintiffs, | |
| vs. | ORDER |
| FLATHEAD CONSERVATION DISTRICT, | |
| Defendant, | |
| and | |
| FRIENDS OF MONTANA STREAMS AND RIVERS, | |
| Defendant-Intervenor. | |

This declaratory judgment action comes before the Court on the parties'
cross motions for summary judgment on the question of whether Defendant
Flathead Conservation District ("FCD") has jurisdiction to enforce the Montana
Natural Streambed and Land Preservation Act of 1975 ("Streambed Act"), Mont.
Code Ann. § 75-7-101 *et seq*., on a private inholding within Glacier National Park.
(Docs. 29, 32, 35). For the reasons discussed below, Plaintiffs John and Stacy
Ambler's ("the Amblers") motion for summary judgment (Doc. 35) is granted, and

the cross-motions for summary judgment filed by FCD and Defendant-Intervenor Friends of Montana Streams and Rivers ("FMSR") (Docs. 29, 32) are denied.

## I.    Background

In June 2019, the Amblers purchased a .53-acre parcel of real property located in Apgar Village within Glacier National Park in Flathead County, Montana ("the Ambler Property"). (Doc. 31 at ¶¶ 7, 13). The Ambler Property is adjacent to McDonald Creek, and was originally part of a much larger 182-acre parcel of land acquired by Charles Howe in May 1908 pursuant to the Homestead Act of 1862. (Docs. 31 at ¶ 10; 34 at ¶ 2).

Glacier National Park was created by an act of Congress on May 11, 1910. 16 U.S.C. § 161 ("Glacier Park Act"). Howe's 182-acre parcel was surrounded by land that became part of Glacier National Park. (Doc. 31 at ¶ 11).[1] While portions of the 182-parcel have since been purchased by the United States and become part of Glacier National Park, other portions—including the Ambler Property—have remained in private ownership. (Doc. 31 at ¶ 11; Doc. 34 at ¶ 7).

---

[1] The Amblers lodge a general objection to FCD's Statement of Undisputed Facts to the extent FCD's factual statements are not supported by citations to a specific pleading, deposition, answer to interrogatory, admission, or affidavit as required by Local Rule 56.1(a)(2). (Doc. 41 at ¶ 1). Although FCD does not support the factual assertions in paragraph 11 of its Statement of Undisputed Facts with citations to the record, the Amblers do not contend that the factual assertions are incorrect.

FCD is a governmental subdivision of the State of Montana charged in part with administration of the Streambed Act. (Doc. 40 at ¶ 3). In early 2023, FCD received several complaints about a house under construction on the Ambler Property. (Doc. 31 at ¶ 15).[2] Representatives of FCD and Montana Department of Fish, Wildlife and Parks conducted a site inspection on February 27, 2023. (Doc. 31 at ¶ 17; Doc. 33-2 at ¶ 5). FCD asserted jurisdiction over the Ambler Property and determined that the Amblers had initiated a project on the bank of McDonald Creek, a perennial stream, without a 310 permit in violation of the Streambed Act. (Doc. 11 at ¶ 4; Doc. 31 at ¶ 19; Doc. 34 at ¶ 17). FCD advised the Amblers that they would be required to remove the structure, and to also apply for and obtain a 310 permit under the Act prior to removal. (Doc. 11 at ¶ 4).

The Amblers requested a declaratory ruling regarding the FCD's jurisdictional determination, asserting that the United States has exclusive jurisdiction over private property within the boundary of Glacier National Park, and FCD does not have jurisdiction to enforce the Streambed Act on the Ambler

---

[2] To support many of the procedural facts in its Statement of Undisputed Facts, FCD cites generally to the public record for the Declaratory Ruling—McDonald Creek Violation, available at: flatheadcd.org/310-stream-permits/declaratory-ruling-mcdonald-creek-violation (Doc. 31 at ¶¶ 15-26). The Amblers do not dispute the accuracy of these procedural facts, which are included here primarily for background purposes.

Property. (Doc. 11 at ¶ 5; Declaratory Ruling—McDonald Creek Violation, FCD-2; FCD-5).

FCD determined that the Amblers' petition raised matters of significant public interest and held a public hearing on August 25, 2023. (Doc. 34 at ¶ 19; Declaratory Ruling—McDonald Creek Drainage, FCD-4). On November 13, 2023, FCD issued Findings of Fact and Conclusions of Law concluding that it has jurisdiction over the Ambler Property. (Doc. 33-2 at 22). FCD again determined that the Amblers were in violation of the Streambed Act, that they must remove the structure on their property, and that they must apply for and obtain a 310 permit to do so. (Doc. 11 at ¶ 6).

On December 12, 2023, the Amblers filed this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, for the purpose "of determining the rights, duties, and legal relations among the parties relating to federal versus state law and jurisdiction over construction activities on real property owned by the Amblers and located within the boundaries of Glacier National Park." (Doc. 1 at ¶ 3). The Amblers, who are residents of and domiciled in San Diego, California, invoke the Court's diversity jurisdiction under 28 U.S.C. § 1332, and federal question jurisdiction under 28 U.S.C. § 1331. (Doc. 1 at ¶¶ 1, 6-10). The Amblers allege the Court has federal question jurisdiction because there is an actual and justiciable controversy between the parties, and their declaratory

judgment claim raises the federal question of whether the United States has exclusive jurisdiction over the Ambler Property pursuant to 16 U.S.C. §§ 162 and 163. (Doc. 1 at ¶¶ 9-10).

The single-count Complaint seeks a declaratory judgment against FCD, declaring that FCD has no jurisdiction over the Ambler Property, and that the Streambed Act does not apply to the Ambler Property. (Doc. 1 at 6). The Court granted Friends of Montana Streams and Rivers ("FMSR") leave to intervene permissively as a defendant (Doc. 26), and the parties have filed cross-motions for summary judgment on the Amblers' declaratory judgment claim (Count 1). (Docs. 29, 32, 35). The motions are fully briefed, and the Court heard oral argument on January 8, 2025.

## II.    Legal Standard

When considering cross-motions for summary judgment, the court must evaluate each party's motion on its own merits. *Fair Housing Council of Riverside Co., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The party seeking summary judgment bears the initial burden of establishing "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Boulter v. Hartford Fire Ins. Co.,* 321 F. Supp. 3d 1199, 1201 (D. Mont. 2018).

To defeat summary judgment, the non-moving party must designate by affidavits, depositions, answers to interrogatories or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattret*, 477 U.S. 317, 324 (1986). The non-moving party may not rest upon the mere allegations or denials of the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.,* 504 F.3d 1017, 1020–21 (9th Cir. 2007).

## III.    Discussion

The Amblers argue the FCD lacks jurisdiction to enforce the Streambed Act on the Ambler Property because the State of Montana statutorily ceded exclusive jurisdiction over all land within Glacier National Park—including private inholdings—to the United States subject to certain reservations that do not apply here, and the United States accepted the cession subject to the same reservations.

FCD and FMSR (collectively "Defendants") counter that when Congress created Glacier National Park in 1910, it specifically excluded property held in private ownership. Defendants contend that because private inholdings were not included within Glacier National Park, the State of Montana did not cede exclusive jurisdiction over private inholdings to the United States and FCD therefore has

jurisdiction to enforce state law, including the Streambed Act, on the Ambler Property.

Even if the cession and acceptance of jurisdiction over Glacier National Park does apply to private inholdings, Defendants argue the State of Montana has jurisdiction to enforce the Streambed Act on the Ambler Property for several reasons, summarized as follows: (1) by accepting the cession, the United States assimilated all Montana law—including the Streambed Act—into federal law (Doc. 33 at 13-15); (2) the Streambed Act is consistent with the purpose for which Glacier National Park was created (Doc. 30 at 16-17); (3) federal regulations specific to Glacier National Park support concurrent FCD jurisdiction and application of state and local law (Doc. 30 at 13-15); (4) because National Park Service regulations do not generally apply to private inholdings, public policy favors allowing state regulation of privately owned property in Glacier National Park (Doc. 33 at 16-18); and (5) state enforcement of the Streambed Act is not preempted by federal law because there are no federal regulations governing construction on the banks of perennial streams on private inholdings in Glacier National Park (Doc. 30 at 18-22). Finally, even if the Ambler Property is under the exclusive jurisdiction of the United States, FCD contends the home the Amblers have built is prohibited by federal law.

The Court addresses these issues in the order set forth below, beginning with threshold question of whether the State of Montana has ceded exclusive jurisdiction over private inholdings in Glacier National Park to the United States.

## A.    Whether the cession and acceptance of jurisdiction applies to private inholdings

It is well-settled that the federal government may acquire legislative jurisdiction over land within a state by the state's cession of jurisdiction, coupled with the federal government's acceptance of the cession.[3] *See e.g. Defenders of Wildlife v. Everson*, 984 F.3d 918, 925 (10th Cir. 2020) (citing *Kleppe v. New Mexico,* 426 U.S. 529, 542 (1976)). When a state cedes jurisdiction and Congress accepts the cession, the legislative jurisdiction acquired by the federal government "may range from exclusive federal jurisdiction with no residual police power, to concurrent, or partial federal legislative jurisdiction, which may allow the State to exercise certain authority." *Kleppe*, 426 U.S. at 542 (internal citations omitted).

"The terms of the cession, to the extent that they may lawfully be prescribed, determine the extent of the Federal jurisdiction."[4] *United States v. Unzeuta*, 281

---

[3] Legislative jurisdiction is "the authority of a state to make its law applicable to persons or activities." *Everson*, 984 F.3d at 924. Judicial jurisdiction, in contrast, is "[t]he authority by which courts and judicial officers take cognizance of and decide cases." *Lake v. Ohana Military Communities, LLC*, 14 F.4th 993, 1000-1001 (9th Cir. 2021) (citing *Jurisdiction, Black's Law Dictionary* 991 (4th ed. 1951)).

[4] Montana law governing the cession of jurisdiction is consistent on this point, and similarly provides that "[t]he extent of the jurisdiction of this state over places that

U.S. 138, 142 (1930). When a state cedes jurisdiction to the United States, it may reserve concurrent jurisdiction provided the reservation is consistent "with the effective use of the property for the public purposes intended." *Chicago, Rock Island & Pacific Ry. Co. v. McGlinn*, 114 U.S. 542, 546 (1885). *See also, Unzeuta*, 281 U.S. at 142 (when "a state cedes jurisdiction to the United States, the state may impose conditions which are not inconsistent with the carrying out of the purpose of the acquisition").

The Amblers argue the State of Montana ceded, and the United States accepted, exclusive jurisdiction over all land within Glacier National Park, including private inholdings like the Ambler Property, subject only to the specific reservations articulated in the applicable cession statute. In 1911, the Montana legislature enacted the following cession statute as to Glacier National Park:

> **Glacier national park.** Exclusive jurisdiction shall be and the same is hereby ceded to the United States over and within all the territory which is now or may hereafter be included in that tract of land in the state of Montana set aside by the act of congress, approved May 11, 1910, for the purposes of a national park, and known and designated as "The Glacier national park", saving, however, to the said state the right to serve civil or criminal process within the limits of the aforesaid park in any suits or prosecution for or on account of rights acquired, obligations incurred, or crimes committed in said state but outside of said park; and saving, further, to the state the right to tax persons and corporations, their franchises and property on the lands included in said park; provided, however, that jurisdiction shall not vest until the United States, through the proper officers, notifies the governor of this state that it assumes police or military jurisdiction over said park.

---

have been or may be ceded to…the United States is qualified by the terms of such cession…" Mont. Code. Ann. § 2-1-201.

Mont. Code Ann. § 2-1-205. The United States accepted Montana's cession of

jurisdiction by way of the following statute, enacted in 1914:

> Sole and exclusive jurisdiction is assumed by the United States over the
> territory embraced with the Glacier National Park, saving, however, to the
> State of Montana the right to serve civil or criminal process within the limits
> of the aforesaid park in suits or prosecution for or on account of rights
> acquired, obligations incurred, or crimes committed in said State but outside
> of said park, and saving, further, to the said State the right to tax persons and
> corporations, their franchises and property, on the lands included in said
> park. All the laws applicable to places under the sole and exclusive
> jurisdiction of the United States shall have force and effect in said park. All
> fugitives from justice taking refuge in said park shall be subject to the same
> laws as refugees from justice found in the State of Montana.

16 U.S.C. § 163. Looking to the terms of the cession and acceptance, the Amblers

assert that Montana ceded exclusive legislative jurisdiction over Glacier National

Park to the federal government, subject only to the reservation of concurrent state

jurisdiction for service of process and taxation. The Amblers further assert that the

exclusive jurisdiction of the federal government extends to private property within

Glacier National Park.

     To support the latter assertion, the Amblers rely on *United States v.*

*Peterson*, which held that the federal government had exclusive jurisdiction over

privately owned lands located within the boundaries of Kings Canyon National

Park under the terms of a cession and therefore had jurisdiction to enforce a

National Park Service regulation prohibiting the sale of liquor on private

inholdings without a federal permit. 91 F.Supp. 209 (S.D. Cal. 1950), *aff'd*, 191

F.2d 154 (9th Cir. 1951). Much like the Montana cession statute at issue here, California's cession statute ceded "exclusive jurisdiction" to the United States "over and within all of the territory which is now or may hereafter be included in those several tracts of land in the State of California set aside and dedicated for park purposes by the United States as 'King Canyon National Park,'" subject to reservations of state jurisdiction for service of process, taxation, and the collection of license fees for fishing in the park. *Peterson*, 91 F.Supp. at 211. Although the cession and acceptance statutes did not specifically mention privately owned land within the park, the district court held that the cession applied to private inholdings. *Peterson*, 91 F.Supp. at 212. The Ninth Circuit agreed, concluding that "California and the United States were intending by the statutes of cession and acceptance to accomplish unified policing of privately owned and public lands within the park boundaries for the public good in administering the National Park." *Peterson*, 191 F.2d at 156.

The Ninth Circuit later relied on *Peterson* in similarly concluding that Montana has ceded, and the United States has accepted, exclusive jurisdiction over privately owned land located within the boundaries of Glacier National Park. *Macomber v. Bose*, 401 F.2d 545 (1968). At issue on appeal in *Macomber* was whether the district court had federal question jurisdiction over a water rights dispute between owners of real property within the boundaries of Glacier National

11

Park. *Macomber*, 401 F.2d at 545. To answer this question, the Ninth Circuit considered whether Montana had ceded, and the United States had accepted, "sovereignty and political dominion over privately own land located within the boundaries of the park." *Macomber*, 401 F.2d at 546. The Ninth Circuit focused on the acceptance statute of 1914, which defined "the area over which the United States assumed dominion…as 'the territory embraced within the Glacier National Park.'" *Macomber*, 401 F.2d at 547 (quoting 16 U.S.C. § 163). Citing *Peterson*, the Ninth Circuit concluded that this language included "not only the public lands dedicated to park purposes by the United States but all privately owned lands within the described park boundaries." *Macomber*, 401 F.2d at 547 (citing *Peterson*, 191 F.2d 154)). The Ninth Circuit explained that "[b]y this cession and acceptance, federal authority became the only authority operating within the ceded area[,]" and concluded "[s]tate law theretofore applicable within the area was assimilated as federal law, to remain in effect until changed by Congress." *Macomber*, 401 F.2d at 546 (citing *James Stewart & Co. v. Sadrakula*, 309 U.S. 94 (1940)). Because "[r]ights arising under such assimilated law, arise under federal law," *Macomber* held that the water rights dispute between the owners of private inholdings in Glacier National Park gave rise to federal question jurisdiction. *Macomber*, 401 F.2d at 546.

According to the Amblers, *Macomber* makes clear that the federal government has exclusive jurisdiction over the Ambler Property and other private inholdings in Glacier National Park. FCD disagrees and asserts that *Macomber* is inapposite because it only considered the issue of federal question jurisdiction, and did not address whether a particular state law should apply to property in Glacier National Park. (Doc. 30 at 10-11). While the ultimate issue in *Macomber* was one of federal judicial jurisdiction, the Ninth Circuit's holding was premised on the legal conclusion that Montana has ceded, and the United States has accepted, exclusive legislative jurisdiction over "all privately owned lands within the described park boundaries." *Macomber*, 401 F.2d at 547.

Defendants further argue that in reaching this conclusion, *Macomber* failed to properly consider the relevant statutory framework. Defendants assert that when Congress created Glacier National Park in 1910, it expressly excluded property held in private ownership prior to the creation of the park. (Doc. 38 at 4; Doc. 39 at 3). The Glacier Park Act described land in northwestern Montana that was "withdrawn from settlement, occupancy or disposal" and "set apart as a public park or pleasure ground for the benefit and enjoyment of the people of the United States[.]" 16 U.S.C. § 161. The statute described the boundaries of the park, and further provided that "[n]othing herein contained shall affect any valid claim, location, or entry existing under the land laws of the United States before May 11,

13

1910, or the right so any such claimant, locator, or entryman to the full use of enjoyment of his land." 16 U.S.C. § 161. Defendants contend this disclaimer provision applies to the Ambler Property because it was an "existing claim" at the time Glacier National Park was established and jurisdiction was ceded, which means the Ambler Property is not, and never was, part of Glacier National Park.

Defendants claim this provision is important because Montana ceded exclusive jurisdiction only as to "territory which is now or may hereafter be included in that tract of land in the state of Montana set aside by" Congress in 16 U.S.C. § 161, and the United States then accepted jurisdiction only as to the "territory embraced within Glacier National Park." Mont. Code. Ann. § 2-1-205 and 16 U.S.C. § 163. Because the cession and acceptance relate only to land reserved by the United States in 1910, and that reservation did not—according to Defendants—include privately owned property, Defendants contend the United States did not acquire jurisdiction over private inholdings in Glacier National Park, including the Ambler Property. (Doc. 30 at 10; Doc. 39 at 4).

Defendants' argument that the disclaimer provision in 16 U.S.C. § 161 excludes property held in private ownership from the effect of the Glacier National Park cession and acceptance statutes is foreclosed by *Macomber*. The appellee in *Macomber* argued that the disclaimer language in § 161 excluded all privately owned lands from the jurisdiction of the United States "and continued state law as

14

the effective authority applicable to such lands." *Macomber*, 401 F.2d at 547. The

Ninth Circuit disagreed, explaining that § 161 withdrew federal land within the

described boundaries from further settlement subject to the disclaimer language,

which is quoted in a footnote, but "did not purport to deal with United States

jurisdiction." *Macomber*, 401 F.2d at 546, 547. *See also*, *McFarland v.*

*Kempthorne*, 464 F.Supp.2d 1014, 1024 (D. Mont. 2006) (concluding that the clear

intent of the disclaimer provision in § 161 "was to ensure that the creation of

Glacier National Park did not extinguish existing homestead entries within the

boundaries of the Park that had not yet been perfected"). *Macomber* recognized

that the jurisdiction of the United States is instead addressed by Mont. Code Ann. §

2-1-205 and 16 U.S.C. § 163, which the Ninth Circuit interpreted to include the

cession and acceptance of jurisdiction over private inholdings within the

boundaries of Glacier National Park. *Macomber*, 401 F.2d at 546.

FMSR additionally argues that in reaching this conclusion, *Macomber* failed

to consider the interplay between § 163 and 16 U.S.C. § 167a, which was enacted

in 1946 and authorizes the Secretary of Interior to acquire non-federal property

"within the authorized boundaries" of Glacier National Park in exchange for

federally owned property within the park. 16 U.S.C. § 167a(a). Section 167a

provides that any property acquired by this method "shall, upon acceptance of title

thereto, become a part of the Glacier National Park, and shall be subject to all laws

applicable to such area," and authorizes the Secretary of Interior "to issue such regulations as he deems necessary for carrying out the purposes of this Act." 16 U.S.C. § 167a(b). As FMSR reads it, § 167a thus recognizes that the federal government does not have jurisdiction over non-federal property "within the authorized boundaries" of the park unless and until the non-federal property is acquired by the Secretary of the Interior and thus becomes "part of Glacier National Park." 16 U.S.C. 167a. FMSR also points out that unlike § 167a, which refers to land within the "authorized boundaries" of Glacier National Park, § 163 refers to "territory embraced" within Glacier National Park. FMSR asserts *Macomber*'s conclusion that the "territory embraced" within the park includes all land "within the described park boundaries" fails to account for this distinction and renders § 167(a)'s use of the phrase "authorized boundaries" superfluous.

As the Amblers submit in reply, however, FMSR's argument confuses law regarding ownership of property within the boundaries of Glacier National Park with law governing state versus federal legislative jurisdiction over property within the park's boundaries. Section 167a addresses ownership, in that it provides a mechanism for the Secretary of Interior to obtain title to private inholdings, but it does not address the federal government's legislative jurisdiction. *See Macomber*, 401 F.2d at 547 (differentiating between 16 U.S.C. § 161, which established the boundaries of Glacier National Park but did not address jurisdiction, and 16 U.S.C.

§ 163, which defined the area over which the United States accepted jurisdiction as "the territory embraced within" the park); *Free Enterprises Canoe Renters Association v. Watt*, 711 F.2d 852, 856 (8th Cir. 1983) (noting that the phrase "within the boundaries" incorporated "federal, state, and private land" and made "no distinction on the basis of ownership"). Section 167a makes clear that private inholdings are not owned by the federal government and thus are not part of Glacier National Park unless and until title to those lands is accepted by the Secretary of the Interior. In doing so, the statute recognizes that private inholdings "within the authorized boundaries of the Glacier National Park" are subject to different federal laws and regulations than federally owned lands that are "a part of the Glacier National Park." 16 U.S.C. § 167a(b). Contrary to FMSR's reading of the statute, there is nothing in § 167a that conflicts with *Macomber*'s conclusion that the United States has jurisdiction over private inholdings in Glacier National Park.[5]

Even if FMSR's reading of § 167(a) is correct, its argument is in effect that the Ninth Circuit got it wrong in concluding that Montana ceded, and the United States accepted, jurisdiction over privately owned land within the boundaries of Glacier National Park. The Court is bound by *Macomber*, which forecloses

---

[5] As addressed below, for example, National Park Service regulations generally do not apply to private inholdings, unless the regulations are specifically written to be applicable on such lands. *See* C.F.R. 36 C.F.R. 1.2(b).

FMSR's argument to the contrary and makes clear that the federal government has legislative jurisdiction over private inholdings within the park, including the Ambler Property.

### B.    Whether the Streambed Act applies to the Ambler Property

#### 1.    Whether the Streambed Act is assimilated as federal law

Assuming, as established above, that Montana's cession of jurisdiction over Glacier National Park extends to private inholdings, FMSR contends the Streambed Act applies to the Ambler Property because when the United States accepted the cession it assimilated all Montana law—including the Streambed Act—into federal law for purposes of regulating land within the boundaries of Glacier National Park. (Doc. 33 at 13-15). The Amblers counter that only state law in effect at the time of the cession is assimilated as federal law. Because the 1976 Streambed Act was not in effect when the United States accepted jurisdiction over Glacier National Park in 1914, the Amblers take the position that the statute has not been assimilated into federal law and its requirements do not apply to their inholding. [6]

---

[6] The Amblers also argue that, even if the Streambed Act was assimilated as federal law, jurisdiction to enforce such a federalized state law would rest with the United States and its agencies, not the FCD. (Doc 42). Even if that is correct, the practical result here would be the same—the Amblers would be required to comply with the Streambed Act, and FCD would have the authority to determine whether they have in fact done so.

These assimilation arguments implicate federal enclave jurisprudence. Generally speaking, a federal enclave is an area of land belonging to the federal government and over which the federal government exercises exclusive jurisdiction. *See e.g., Lake v. Ohana Military Communities, LLC*, 14 F.4th 993, 1003-04 (9th Cir. 2021) (recognizing that the federal enclave doctrine applies to "federal land" that is subject to the exclusive jurisdiction of the United States). Glacier National Park is one such federal enclave. Although the Ambler Property is private land, and so is not part of the federal enclave that surrounds it, it is nevertheless subject to the exclusive legislative jurisdiction of the federal government under the terms of the cession and acceptance statutes for Glacier National Park. *Macomber*, 401 F.2d at 546-47. Federal enclave jurisprudence addressing the assimilation of state law where, as here, the state has ceded exclusive legislative jurisdiction to the federal government, provides guidance in determining whether the Streambed Act has been assimilated as federal law for purposes of regulating land within the boundaries of Glacier National Park, including the Ambler Property.

It has long been established that when the United States acquires exclusive jurisdiction by cession, all state law in effect on the date of cession and not inconsistent with the federal use of the property is assimilated as federal law. *See e.g., James Stewart*, 309 U.S. at 100. "This approach ensures 'that no area however

small will be without a developed legal system for private rights,' while simultaneously retaining the primacy of federal law and requiring future statutory changes to be made by Congress." *Parker Drilling Mgmt. Services, Ltd. v. Newton*, 587 U.S. 601, 612 (2019) (citing *James Stewart*, 309 U.S. at 100). *See also Allison*, 689 F.3d at 1237 (explaining that even though state law will not remain static outside the ceded area, any changes made to the state law applicable within that area "must be a matter of federal law" and "Congressional action is necessary to keep state law current") (citing *James Stewart*, 309 U.S. at 100).

As a general rule "only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area. Congressional action is necessary to keep it current." *James Stewart*, 309 U.S. at 100. *See also Parker Drilling,* 587 U.S. at 612 ("Generally, when an area in a state becomes a federal enclave, only the state law in effect at the time of the transfer of jurisdiction continues in force as surrogate federal law.") (quoting *James Stewart* 309 U.S. at 100); *Paul*, 371 U.S. at 268 ("Since a State may not legislate with respect to a federal enclave unless it reserved the right to do so when it gave its consent to the purchase by the United States, only state law existing at the time of the acquisition remains enforceable, not subsequent laws.").

In *Macomber*, the Ninth Circuit specifically applied the rule from *James Stewart* to Glacier National Park, stating:

> By this cession and acceptance, federal authority became the only authority operating within the ceded area. State law theretofore applicable within the area was assimilated as federal law, to remain in effect until changed by Congress. Rights arising under such assimilated law, arise under federal law and are properly the subject of federal jurisdiction.

*Macomber*, 401 F.2d at 546 (internal citations omitted). Consistent with *James Stewart*, *Macomber* recognized that only state law "theretofore applicable" in the ceded area was assimilated as federal law, and applied that principle to private inholdings within the park.

Like most general rules, the rule that only state law in effect at the time of the cession applies to the ceded area is subject to some exceptions. *Allison*, 689 F.3d at 1237. One "exception recognizes the obvious fact that Congress can legislate on behalf of the enclave and may provide for the application of state laws enacted after the creation of the enclave." *Allison*, 689 F.3d at 1237 (citing *Sharpnack*, 355 U.S. at 294-95). Another exception recognizes that the state may reserve jurisdiction over a variety of matters at the time of cession, as Montana did here with respect to the right to impose taxes and serve process. *Allison*, 689 at 1238 (citing *James v. Dravo Contracting Co.*, 302 U.S. 134, 148-49 (1937)). A third exception permits application of current state regulations "if the same basic scheme" has been in effect since the time of the cession. *Paul*, 371 U.S at 269; *see*

*also Allison*, 689 F.3d at 1237 (construing this exception to include "minor regulatory changes to state programs that existed at the time of the cession"); *Fierro v. Dyncorp Int'l LLC*, 2021 WL 275487 at *3 (C.D. Cal. Jan. 27, 2021) (construing *Paul*'s "minor change" exception to permit application of a state law requiring employers to include additional information on wage statements because, for as long as the federal enclave at issue had existed, employers operating on the enclave had been required to comply with California law regulating wage statements).

FMSR does not expressly invoke a specific exception, but rather argues generally that when the United States accepted the cession as to Glacier National Park, it assimilated all pre-existing and future state law, including the later-enacted Streambed Act. FMSR acknowledges that this argument runs counter to *Macomber*, which stated that only state law "theretofore applicable" in the ceded area was assimilated as federal law. (Doc. 33 at 13). But FMSR argues that a recent case out of this district, *Howard v. Todd*, 2022 WL 1044972 (D. Mont. Apr. 7, 2022), supports its position. *Howard* involved a dispute between tenants in common of real property within the exterior boundaries of the Glacier National Park. *Howard*, 2022 WL 1044972, at *1. The plaintiffs sought to divide the property pursuant to the Montana Uniform Partition of Heirs Property Act, Mont. Code Ann. §§ 70-29-401, *et seq.*, which did not exist at the time of the cession.

*Howard*, 2022 WL 1044972, at *1. The Court found that the request to partition

the property was governed by the act and explained its reasoning in a footnote:

> Although the caselaw makes clear that this Court has jurisdiction over
> federal inholdings in Glacier Park, *Macomber v. Bose,* 401 F.2d 545 (9th
> Cir. 1968) (interpreting 16 U.S.C. §§ 161 *et seq.*), the law governing
> partition is less clear. Pursuant to *Macomber*, '[s]tate law…applicable within
> the area was assimilated as federal law, to remain in effect until changed by
> Congress.' *Id.* at 546 (citation omitted). In the absence of any such change,
> Montana property law applies here.

*Howard*, 2022 WL 1044972, at *3 n. 2. There appears to have been no

disagreement between the parties over whether the act applied, and the extent of

federal versus state legislative jurisdiction was evidently not at issue, as it was

touched on only briefly in a footnote. That footnote omitted "theretofore

applicable" from its quotation of *Macomber*, did not address the general rule that

only state law in effect at the time of the cession applies, and did not consider

whether an exception to that rule might apply. Because *Howard* involved a dispute

between private parties who did not contest the application of state law, the Court

had no reason to discuss the issue in any detail and its footnoted conclusion is of

little help in determining whether the Streambed Act has been assimilated into

federal law.

     In fact, another case out of this district addressing the application of state

law in Montana's national parks adhered to the general rule that "only state laws in

effect at [the] time when jurisdiction is transferred" to the United States continue

and are assimilated as federal law.[7] *See Olig v. Xanterra Parks & Resorts, Inc.,* 2013 WL 3936904, at *5 (D. Mont. July 30, 2013) (holding that Montana's Wrongful Discharge from Employment Act did not apply in Yellowstone National Park because it was enacted long after Montana's cession of jurisdiction which reserved "only concurrent jurisdiction for the execution of process, civil and criminal, lawfully issued by the courts of the state").

FMSR also cites 63 P.L. 177, 38 Stat. 699, 63 Cong. Ch. 264 (Aug. 22, 1914) for the proposition that when the United States accepted the cession, it assimilated pre-existing and future Montana law into federal law for purposes of regulating Glacier National Park. Portions of this law were codified in the acceptance statute, 16 U.S.C. § 163, and 16 U.S.C. § 169, which provided:

> **Same; criminal laws applicable.** If any offense shall be committed in the Glacier National Park, which offense is not prohibited or the punishment is not specifically provided for by any law of the United States, the offender shall be subject to the same punishment as the laws of the State of Montana in force at the time of the commission of the offense may provide for alike offense in said State; and no subsequent repeal of any such law of the State of Montana shall affect any prosecution for said offense committed within said park.

16 U.S.C. § 169 (1914) 63 P.L. 177, 38 Stat. 699, 63 Congr. Ch. 264 Sec. 3.

---

[7] Because the cession as to Glacier National Park applies to private inholdings, the fact that *Olig* did not specifically address legislative jurisdiction over privately owned property is immaterial.

FMSR rightly points out that this statute effectively assimilated future Montana criminal law in effect at "the time of the commission of the offense," and relies on this statutory language to argue the United States also assimilated future Montana civil law. (Doc. 33 at 13). This argument is unpersuasive. The statute plainly applies only to criminal laws and does not mention or assimilate then-existing or future state civil law. Section 169 was repealed in 1948, and partially reincorporated in the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. *See* 80 P.L. 773, 62 Stat. 869, 80 Cong. Ch. 646 (June 25, 1948 (repealing 16 U.S.C. § 169); 80 P.L. 772, 62 Stat. 683, 80 Cong. Ch. 645 (June 25, 1948) (enacting the Assimilative Crimes Act). Like § 169, the ACA assimilates only a state's criminal laws. *See e.g. U.S. v. Clark*, 4 F.Supp.2d 940, 942 (C.D. Cal. 1998) ("Although the ACA on its face makes no distinction between criminal and civil punishment statutes, the Ninth Circuit generally understands the ACA to assimilate only a state's criminal laws.") (citing *United States v. Carlson*, 900 F.2d 1346, 1348 (9th Cir. 1990)).

Accordingly, FMSR has not shown that the United States has assimilated state civil statutes like the Streambed Act which were not in effect at the time of the cession. Nor has it established a basis for invoking any other exception to the general rule that only state law in effect at the time of the cession applies. FMSR has not shown that the Streambed Act represents a continuation of the same basic

scheme of Montana law in effect since 1914, and as addressed above the State of

Montana reserved concurrent jurisdiction only as to service of process and

taxation. Because the Streambed Act did not exist at the time of the cession and

acceptance, and only state law in effect at the time of the cession applies, the

Streambed Act has not been assimilated as federal law for purposes of regulating

private inholdings land within the boundaries of Glacier National Park.

    2.    <u>Whether Montana has concurrent jurisdiction to enforce the</u>
<u>Streambed Act on private inholdings in Glacier National Park</u>

    a.    *Conditions not inconsistent with the effective use of the*
*property for the public purposes intended*

Notwithstanding the terms of the cession, FCD asserts that Montana has

jurisdiction to enforce the Streambed Act on private inholdings because the statute

is consistent with the purpose for which Glacier National Park was created. (Doc.

30 at 16-17). When a state cedes jurisdiction to the United States, the "cession may

be accompanied with any conditions not inconsistent with the effective use of the

property for the public purposes intended." *McGlinn*, 114 U.S. at 546. *See also,*

*Unzeuta*, 281 U.S. 138, 142 (1930) (citing *McGlinn* and reiterating that when "a

state cedes jurisdiction to the United States, the state may impose conditions which

are not inconsistent with the carrying out of the purposes of the acquisition.").

FCD relies on this statement of law to argue that the Streambed Act applies

to private property located within Glacier National Park. (Doc. 30 at 16-17). The

general purpose of the Streambed Act is to protect and preserve Montana's "natural rivers and streams and the land and property immediately adjacent to them," Mont. Code Ann. § 75-7-102(2), while the fundamental purpose of the National Park System is "to conserve the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such a manner and such a means as will leave them unimpaired for the enjoyment of generations." 54 U.S.C. § 100101(a)(2). Because the purpose of the Streambed Act is consistent with the purpose of Glacier National Park, FCD asserts that Montana has imposed conditions that are consistent "with carrying out the purposes of the acquisition" and therefore has jurisdiction to enforce the Streambed Act on private property located within the park, including the Ambler Property. *Unzeuta*, 281 U.S. at 142.

FCD's argument misinterprets *Unzeuta*, which recognized that the terms of the cession determine the extent of federal jurisdiction, and explained that after exclusive jurisdiction has been accepted by the United States it cannot "be recaptured by the action of the state alone." *Unzeuta*, 281 U.S. at 142. *Unzeuta* relied in part on *Arlington Hotel Co. v. Fant*, 278 U.S. 439 (1929) to support its statement that when a state cedes jurisdiction to the federal government, it may impose conditions that are consistent with the carrying out of the purpose of the acquisition. *Unzeuta*, 278 U.S. at 142.

In *Arlington*, the plaintiffs filed suit against a privately owned hotel located on national park land, seeking damages for personal property destroyed in a fire while they were guests at the hotel. *Arlington*, 278 U.S. at 445. In their defense, the hotel owners relied on a state statute relieving innkeepers of liability to hotel guests for fire-related losses. *Arlington*, 278 U.S. at 445-46. But because the state had ceded exclusive jurisdiction over the national park to the United States several years before the statute invoked by the hotel owners was enacted, the Supreme Court held the later-enacted statute did not apply. *Arlington*, 278 U.S. 439.

The Amblers rely on *Arlington* and *Yellowstone Park Transportation Co. v. Gallatin County*, 31 F.2d 644 (9th Cir. 1929) to support their argument that after a state cedes exclusive jurisdiction to the federal government, the state cannot impose conditions not contemplated by the parties at the time of the cession. In *Yellowstone*, the State of Montana ceded exclusive jurisdiction over all land within Yellowstone National Park to the United States, reserving concurrent jurisdiction only for service of process. *Yellowstone*, 31 F.2d at 645. Unlike the cession statute for Glacier National Park, the cession statute for Yellowstone National Park did not reserve concurrent state jurisdiction to tax people or property within the park. *Yellowstone*, 31 F.2d at 645. The Ninth Circuit rejected the county's attempt to impose taxes on a private company operating within the park. The Court relied on *Arlington Hotel* in concluding that because the state did not reserve the right to tax

28

at the time of the cession, it could not later extend its jurisdiction to impose taxes in the park. *Yellowstone*, 31 F.2d at 645. "In other words, after the date of the cession, the ceded territory was as much without the jurisdiction of the state making the cession as was any other foreign territory, except in so far as jurisdiction was expressly reserved." *Yellowstone*, 31 F.2d at 645.

Montana law addressing the extent of state jurisdiction in ceded areas is consistent with federal caselaw. For example, a Montana statute governing jurisdiction in federal enclaves provides that "[t]he extent of the jurisdiction of this state over places that have been or may be ceded to…the United States is qualified by the terms of such cession[.]" Mont. Code Ann. § 2-1-201. A related statute likewise provides that "the sovereignty and jurisdiction of [the state] extend to all places within its boundaries as established by the constitution, excepting such places as are under the exclusive jurisdiction of the United States." Mont. Code Ann. § 2-1-102.

Read together, *Unzeuta* and *Arlington* stand for the well-settled principle that when a state cedes exclusive jurisdiction to the United States, it may, as a condition to the cession, reserve concurrent jurisdiction over certain matters so long as the reservation is consistent with the effective use of the property for the public purposes intended. But as *Arlington* and *Yellowstone* establish, if the state does not impose conditions at the time of the cession, neither the state nor its

political subdivisions can later impose conditions not contemplated by the parties at the time of the cession.

Here, as addressed above, Montana ceded exclusive jurisdiction over all land within Glacier National Park—including private inholdings— to the United States subject only to the reservation of concurrent state jurisdiction for purposes of service of process and taxation, and the United States accepted the cession subject to the same reservations. Although it presumably could have, Montana did not reserve concurrent jurisdiction to enforce state environmental laws and regulations. By way of illustration, Montana's cession of jurisdiction over Glacier National Park stands in stark contrast with a subsequent statute ceding jurisdiction over lands purchased by the United States, which reserved concurrent jurisdiction to enforce state laws relating to "the department of environmental quality and the enforcement of any regulation promulgated by the department[] in accordance with the laws of the state.[8] Mont. Code Ann. § 2-1-202.

---

[8] "The federal government can acquire exclusive jurisdiction over state land in any one of three ways: (1) excepting the place from the jurisdiction of the state upon the state's admission into the Union; (2) by a cession of jurisdiction to the United States by a state after statehood; or (3) by federal purchase of land with state consent, pursuant to Article 1, Section 8, clause 17 of the United States Constitution." *Wagner v. State*, 889 P.2d 1189, 1190 (Mont. 1995). Because the federal government acquired exclusive jurisdiction over Glacier National Park by a cession of jurisdiction, the statute does not apply here and no party argues otherwise.

The Streambed Act was enacted by the Montana legislature in 1976—more than sixty years after the United States accepted the cession of jurisdiction over Glacier National Park in 1914. Montana did not, at the time of the cession, reserve any concurrent jurisdiction to enforce state environmental statutes and regulations. Under the terms of the cession and acceptance, FCD does not have legislative jurisdiction to enforce the Streambed Act on the Ambler Property.

FCD does not contest that the terms of the cession and acceptance do not include a reservation of concurrent state jurisdiction for the enforcement of state environmental law and regulations. FCD nevertheless argues based on *Howard v. Commissioners of Sinking Fund of City of Louisville*, 344 U.S. 624, 625 (1953) that regardless of the terms of the cession and acceptance, absent an actual conflict between federal and state law "nothing prevents the state from exercising its power over the federal area within its boundaries." (Doc. 38 at 7). Because the Streambed Act is consistent with the purpose of Glacier National Park, and there are no federal regulations governing development on streambanks on private inholdings in the park, FCD asserts that it has the authority to enforce the Streambed Act on the Ambler Property.

In *Howard*, the City of Louisville annexed land containing a federal enclave—a naval ordnance plant—and imposed a local tax on the plant's employees. *Howard*, 344 U.S. at 624. The employees argued that the city did not

have the authority to impose the tax because the federal government had exclusive jurisdiction. *Howard*, 344 U.S. at 624. The Supreme Court allowed the annexation, reasoning that "[a] state may conform its municipal structures to its own structures so long as the state does not interfere with the exercise of jurisdiction within the federal area by the United States." *Howard*, 344 U.S. 626. The Court found that the "change of municipal boundaries did not interfere" with the exclusive jurisdiction of the United States within the area, and explained that the "fiction of a state within a state can have no validity to prevent the state from exercising its power over the federal area within its boundaries, so long as there is no interference with the jurisdiction asserted by the Federal Government." *Howard,* 344 U.S. at 627. The Court ultimately determined that the city could tax employees on the enclave because a federal law, known as the Buck Act, granted the power to tax government employees who worked at the ordnance plant to the states. *Howard*, 344 U.S. at 627.

Some authorities have interpreted *Howard* broadly as standing for the proposition that "[e]ven without express jurisdictional reservations, states may legislate in ways affecting federal enclaves so long as no interference with federal function results." 1 Pub. Nat. Resources L. § 3:8 (2nd ed.) (citing *Howard,* 344 U.S. 624, 626-27 (1953)). *See also Kelly v. Lockhead Martin Services Group*, 25 F.Supp.2d (D.P.R. 1998) (interpreting *Howard* to mean that "all state law rules of

the state in which the enclave exists are applicable within the federal enclave unless they interfere with the federal government's jurisdiction").

FCD urges the Court to do the same here and read *Howard* to mean that all state laws are enforceable by the state on private inholdings within Glacier National Park unless they conflict with federal law. Although the Ninth Circuit has not addressed whether FCD's interpretation of *Howard* is correct, other courts have rejected this argument. In *Allison,* for example, the Tenth Circuit rejected the plaintiff's argument that under *Howard,* "all state laws that do not conflict with federal law or policy are applicable on federal enclaves." *Allison*, 689 F.3d at 1239. Although *Howard* upheld the city's power to tax employees on the federal enclave, it did so because "federal law specifically granted the power to tax to the states" which meant there was "no conflict with federal enclave principles." *Allison*, 689 F.3d at 1239. The *Allison* court found that nothing in *Howard* suggested the Supreme Court was retreating from the rule that only state laws in effect at the time of the cession apply, and to accept the plaintiff's argument it "would have to conclude that *Howard* swallowed most of federal enclave law." *Allison*, 689 F.3d at 1239. *See also, Kasperzyk v. Shetler Security Services, Inc.*, 2014 WL 31434, at *10 (N.D. Cal. 2014) (relying in part on *Allison* and rejecting the argument that under *Howard*, "modern state law should govern so long as its application would not interfere with a federal government interest").

33

The Court finds the reasoning in *Allison* and *Kasperzyk* persuasive. Here, there is no federal statute expressly authorizing the state to enforce the Streambed Act on private inholdings in Glacier National Park. The Court therefore rejects FCD's argument that under *Howard,* the fact that the Streambed Act does not conflict with federal law and is consistent with the purpose of Glacier National Park is sufficient to vest the State of Montana with jurisdiction to enforce the statute on private inholdings in the park.

b.      *Existing National Park Service regulations*

Defendants next make two related arguments in favor of concurrent state jurisdiction based on existing federal regulations. FCD asserts that existing federal regulations specific to Glacier National Park support concurrent state jurisdiction over private inholdings. (Doc. 30 at 13-15). FMSR likewise argues that because National Park Service ("NPS") regulations do not generally apply to private inholdings, public policy favors allowing state regulation of privately owned property in Glacier National Park. (Doc. 33 at 16-18).

Congress has directed the Secretary of Interior, through the National Park Service, to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose" of the national parks, that is, "to conserve the scenery, natural and historic objects, and wild life" in the parks, and "and to provide for the enjoyment of the scenery, natural and historic

objects, and wildlife in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." 54 U.S.C. § 100101(a). A park-specific statute further provides that Glacier National Park

> shall be under the exclusive control of the Secretary of the Interior, whose duties it shall be, as soon as practicable, to make and publish such rules and regulations not inconsistent with the laws of the United States as he may deem necessary or proper for the care, protection, management, and improvement of the same, which regulations shall provide for the preservation of the park in a state of nature so far as is consistent with the purpose so this section and section 161 of this title, and for the care and protection of the fish and game within the boundaries thereof.

16 U.S.C. § 162. To carry out these statutory directives, the NPS has promulgated regulations which are codified in Title 36, Chapter 1 of the Code of Federal Regulations. A general provision addressing the applicability and scope of the regulations in Chapter 1 provides that "[t]he regulations contained in parts 1 through 5, part 7, and part 13 of this chapter do not apply on non-federally owned lands and waters…located within National Park System boundaries, except as provided in paragraph (a) or in regulations specifically written to be applicable on such land and waters." 36 C.F.R. § 1.2(b).

Part 7 sets forth regulations specific to Glacier National Park, and includes regulations related to fishing, the operation of eating, drinking and lodging establishments, water supply and sewage disposal systems, motorboats, Canadian dollars, and commercial passenger-carrying vehicles. 36 C.F.R. § 7.3(a)-(f). Of these, only two apply on their face to non-federally owned land. The first is

subsection (b), which provides that no eating, drinking, or lodging establishment "may be operated on any privately owned lands within Glacier National Park" without a permit from the park Superintendent. 36 C.F.R. § 7.3(b). This regulation further states that a permit will be issued only after a determination that the premises comply with state and county health and sanitary laws that "would apply to the premises if the privately owned lands were not subject to the jurisdiction of the United States." 36 C.F.R. § 7.3(b).

The second regulation that expressly applies to "the privately owned lands within Glacier National Park" is subsection (b), which provides that "any building or structure intended for human habitation, or use," such as a residence like the structure on the Ambler Property, must be "served by water supply and sewage disposal systems that comply with the standards prescribed by State and county laws and regulations applicable in the county within whose exterior boundaries such building is located." 36 C.F.R. § 7.3(c), (c)(1)(i).[9]

FCD asserts that because this regulation for water supply and sewage disposal systems provides for application of Montana law, it contradicts the

_____

[9] In September 2024, the NPS advised the Amblers, that in 2025 it will begin issuing revocable permits for all commercial lodging operating on privately owned land within the park pursuant to 36 C.F.R. § 7.3(b). (Doc. 46-1). The NPS also stated that pursuant to 36 C.F.R. § 7.3(c), "a permit from the NPS is required to construct, rebuild, or alter any water supply or sewage disposal system on privately owned land within the park." (Doc. 46-1).

Amblers' position that private inholdings are under the exclusive legislative jurisdiction of the United States. (Doc. 30 at 14). According to FCD, this deference to Montana law supports its position that the state has concurrent jurisdiction over private inholdings in the park, and has the authority to enforce the Streambed Act on the Ambler Property.

Contrary to FCD's argument, these regulations are consistent with the exercise of exclusive jurisdiction over private inholdings by the federal government. The regulations reflect that the National Park Service exercises jurisdiction to regulate private inholdings as it sees fit, and in doing so decides which state or local laws to apply, if any. Although it has exclusive legislative jurisdiction to do so, the National Park Service has not promulgated any federal regulations governing construction on streambanks on private inholdings, or requiring residences constructed on private land in Glacier National Park to comply with the Streambed Act.

Defendants argue it is thus evident that existing federal regulations for Glacier National Park do not adequately regulate construction on private inholdings, and instead leave a significant regulatory void that, under the Amblers' theory, would allow them to build a residence on their property without any regulatory oversight, including that provided by the Streambed Act. Because allowing largely unregulated development on private inholdings would undermine

the fundamental purpose for which Glacier National Park was created, Defendants assert that public policy favors application of state law to fill the regulatory void left under federal law. While this public policy argument is persuasive, Defendants do not cite any legal authority suggesting that public policy concerns alone provide a legal basis for the Court to conclude that Montana has concurrent legislative jurisdiction to enforce state law on private inholdings.[10]

"[I]t is well established that in order for Congress to subject a federal enclave to state jurisdiction, there must be a specific congressional deferral to state authority over federal property." *West River Elec. Ass'n, Inc. v. Black Hills Power and Light Co.*, 918 F.2d 713, 719 (8th Cir. 1990). In *Howard*, for example, "the statute in question specifically permitted a state income tax on persons residing or working in a 'Federal area'" *West River*, 918 F.2d at 719. Here, the existing federal regulations do not provide a specific deferral to state authority over private

---

[10]    Defendants further contend that FCD has a history of granting 310 permits to parties doing work on federal lands in Montana, including Glacier National Park. (Doc. 30 at 11; Doc. 33 at 14). FMSR has provided evidence that in 2019, the Flathead Electric Cooperative applied for three 310 permits to install utilities on property owned by Glacier National Park—not inholdings—and obtained three separate 310 permits to conduct work under various streambeds. (Doc. 34 at ¶ 20; Docs. 33-3, 33-4 33-5). But neither FCD nor FMSR explains what agency required Flathead Electric Cooperative to apply for 310 permits, and under what authority.

inholdings in the Glacier National Park as required for the state to have concurrent legislative jurisdiction.

          c.     *Whether state enforcement of the Streambed Act is preempted by federal law*

FCD asks the Court to apply a preemption analysis based on the Supremacy Clause of the United States Constitution, Article VI, clause 2, and two Montana Attorney General opinions. (Doc. 30 at 18-22). Under the Supremacy Clause, federal legislation necessarily overrides conflicting state laws. *Kleppe*, 426 U.S. at 543 (citing U.S. Const., Art. VI, cl. 2). FCD contends that because there are no federal regulations governing construction on the banks of perennial streams on private inholdings in Glacier National Park, the Streambed Act does not conflict with, and is not preempted by, federal law.

But as the Amblers rightly counter, the *Yellowstone*, *Unzeuta*, and *Arlington Hotel* line of cases make clear that a preemption analysis does not apply where, as here, the state has ceded, and the federal government has accepted, exclusive legislative jurisdiction over the land at issue. A conflict preemption analysis is generally appropriate where there are competing state and federal laws or regulations, and it is necessary to determine which law takes precedence. *See e.g. Parker Drilling*, 587 U.S. at 610 (conflict preemption analysis applies "only where the overlapping, dual jurisdiction of the Federal and State Governments makes it necessary to decide which law takes precedence"). That is not the situation here.

FCD also relies on a Montana Attorney General Opinion holding that the Streambed Act applies "to non-federal projects on federal land unless a specific act of Congress preempts state regulation, or the state regulation inherently conflicts with applicable federal regulation." (Doc. 30 at 21-22, citing 37 *Montana Att'y Gen. Op.* 15 (1977). This Attorney General opinion is consistent with United States Supreme Court caselaw, which recognizes that "[a]bsent consent or cession a State undoubtedly retains jurisdiction over federal lands within its territory," and may enforce its laws provided the laws do not conflict with federal legislation enacted pursuant to the Property Clause of the United States Constitution. *Kleppe*, 426 U.S. at 543.

Importantly, however, this Attorney General Opinion does not address the state's jurisdiction to enforce the Streambed Act on land over which the state has ceded exclusive jurisdiction, such as Glacier National Park and its inholdings. Because Montana has ceded exclusive legislative jurisdiction over Glacier National Park to the federal government, and that cession applies to private inholdings, the Attorney General Opinion does not advance FCD's position.

### C.    Whether the structure on the Ambler Property is prohibited by federal law

Finally, FCD contends that even if the Ambler Property is under the exclusive jurisdiction of the United States, the home the Amblers have built on their property is prohibited under federal law. (Doc. 38 at 9). Specifically, FCD

asserts the construction of a home on the immediate bank of a perennial stream without a permit constitutes a nuisance under federal law, including 36 C.F.R. § 5.3; violates the National Environmental Policy Act, 42 U.S.C. § 4331 *et seq.*; and violates a federal statute providing that "no permit, license, lease or other authorization" for the erection and maintenance of summer homes or cottages within Glacier National Park shall be granted, 16 U.S.C. § 162a. (Doc. 30, at 12-13, 15).

These arguments go beyond the scope of the sole claim asserted in the Complaint, which seeks a declaratory ruling that FCD lacks jurisdiction over the Ambler Property, and that the Streambed Act does not apply. (Doc. 1 at 6). The sole issue before the Court is whether the FCD has jurisdiction to enforce the Streambed Act on the Ambler Property. FCD may be correct that the home the Amblers have built on their property is prohibited by federal law. But because these issues go beyond the scope of the narrow jurisdictional issue presented on summary judgment, the Court does not address FCD's arguments.

## IV.    <u>Conclusion</u>

In sum, the Court concludes that FCD lacks jurisdiction to enforce the Streambed Act on the Ambler Property because Montana has ceded exclusive jurisdiction over all land within the boundaries of Glacier National Park—including private inholdings—to the federal government. In reaching this

conclusion, the Court is bound by the Ninth Circuit's decision in *Macomber,* which held that Montana's cession of jurisdiction over Glacier National Park "included not only the public lands dedicated to park purposes by the United States but all privately owned lands within the described park boundaries," and that "[b]y this cession and acceptance, federal authority became the only authority operating within the ceded areas." *Macomber*, 401 F.2d at 547. Although state law "theretofore applicable" within the ceded area at the time of the cession was assimilated as federal law, *Macomber*, 401 F.2d at 546, the Streambed Act was not in effect at the time of the cession and was not assimilated for the reasons explained above. Accordingly, under binding Ninth Circuit precedent, FCD lacks jurisdiction to enforce the Streambed Act on the Amblers' private inholding within Glacier National Park.

IT IS ORDERED that the Amblers' motion for summary judgment (Doc. 35) is GRANTED, FCD's cross-motion for summary judgment (Doc. 29) is DENIED, and FMSR cross-motion for summary judgment (Doc. 32) is DENIED. The Clerk of Court is directed to enter Judgment in favor of the Amblers.

DATED this 5th day of February, 2025.

_____
Kathleen L. DeSoto
United States Magistrate Judge